**WIEDEMAN v. UNITED STATES.**
No. 386.

District Court, D. Montana, Great Falls Division.

July 9, 1931.

John W. Mahan, of Helena, Mont., for plaintiff.

W. D. Rankin, U. S. Atty., of Helena, Mont., and D. D. Evans, Veterans' Bureau Counsel., of Ft. Harrison, Mont., for the United States.

PRAY, District Judge.

This is the usual action on a contract of war risk insurance issued by the government and was tried before the court without a jury. The essential facts appear to be as follows: Plaintiff enlisted and entered officers' training school at Fort Dodge about May 17, 1918; was discharged July 7, 1919. Insurance policy became effective June 1, 1918, and premium was paid up to August 1, 1919, continuing policy in force to August 31, 1919. The question now is: Did plaintiff become totally and permanently disabled before the policy lapsed. November 9, 1918, plaintiff was under shell fire and a "sliver of steel" was taken from his right leg; it looked like "a scratch" at the time and healed up; ligaments of left ankle torn by hitting a rock when dismounting from an unruly horse at St. Mihiel; had trench-mouth; April 1, 1919, at Trier, Germany, right leg swelled so badly could not wear trousers; operated on leg at that place and wound did not heal; "I was a casualty from that time until I was discharged;" from that time until discharge pus came out of wound while he was in hospitals at Fifty-Ninth street, N. Y. and at Fort Snelling; it had "kind of healed over" at time of discharge; was clerk in hardware store at Moore, Mont., from September 1, 1919, to 7th of January, 1920; sometimes could work 30 days before pains were bad enough to lay him up; December, 1919, went to hospital, leg painful and swollen, there two weeks; went back to store at Moore for ten days, but could not work all the time on account of pain; 1st of January, 1920, went to hospital, leg swollen and in pain, an operation performed, there three weeks; did not go back to work at Moore; .

did not work again, with slight exceptions, until 1925; entered school under the government at Missoula in June, 1920; worked part time for wages for "a little while," at Missoula Mercantile Company, and "couldn't stand it. * * * I think every night of my life I have gone to bed with a back ache since this thing started getting bad in April 1919." Had two major operations on his leg since December, 1919; in the hospital after one operation from 13th of October, 1926, to 8th of January, 1927; after the other was in hospital from August 1, 1928, to 3d of January, 1929; finished training in June, 1923, but did not find a job until February, 1925; his reason for not going to work before was: "Every place I applied for a job they would ask me why I quit work and I would tell them that my leg didn't stand up under the work and they would say 'We can't use you if you can't stand up under the work'; that is the reason I didn't work."

His job at Windham February, 1925, was that of manager of a lumber and hardware company; he was clerk, bookkeeper, and janitor; he could not keep the job; he "hung on" working part time until September and then "my leg went bad and I went over to Ft. Harrison"; there 15 days; he went back to same job and tried to hold it and did remain until October, 1926, when J. E. Lane, the manager, told him he could not keep him any longer because he could not stand the work; he says that he never was able to work continuously for more than 30 days without laying off because of his physical ailment; the next job was assistant sergeant at arms at Helena during legislative session of 60 days; at the end of 20 days he was obliged to lay off on account of leg, but returned after 3 or 4 days; in 1929 he had a job with the Singer Sewing Machine Company as collector; was on a commission basis and managed to work 3 days a week, was employed here from May until November; he had a clerical job with the Census Bureau in Washington last summer; he suffered pain and discomfort and quit in October; had a wife and child depending upon him since about 1929; on August 18, 1927, the United States Veterans' Bureau gave him a rating for compensation purposes of permanent and total disability from August 15, 1927, apparently based upon the same physical conditions or service disability that existed at the time of his discharge; he claims permanent and total disability since he was operated upon at the Trier Hospital in Germany in 1919.

Plaintiff was at the Montana State University at Missoula during parts of the years beginning in the fall of 1920, 1921, 1922, and spring of 1923, and played baseball at times during the last three years; but upon his own testimony it does not appear that he was subjected to strenuous exercise for any great length of time and never played for pay; the testimony of the baseball coach shows that plaintiff took part in about five games a season during 1921, 1922, and 1923 as a substitute player; each game about two and one-half hours; the coach noticed impairment of locomotion, he always limped and complained about his right leg; when questioned about the injury, he said it occurred during the World War; practice for the spring schedule began according to the weather in March or April and games ended about the second week in June; at Missoula he played City League baseball for a while, one game a week, no practice; in same way he played with team at Helena part of summer of 1929; between June, 1923, and February, 1925, he "tried out" for a job at Springfield, Mass., but when they found his leg was bad would not keep him; went from there to Canton, Ohio, and lived with his wife's mother during the winter, his leg was bad and gave him much pain; at Windham, from February, 1925, to October, 1926, he received $135 per month but hired a man from May, 1926, to last of September at $100 per month to do the work, because he (plaintiff) was unable to do it; in summer of 1925 was there alone, but could not stand the work; in September, 1925, went to Fort Harrison and had a "big abscess" treated in his leg, and on the first of the year 1926 went there again and remained until the first of May and suffered continuously while there; no time that he could sit at a desk for a full day without pain, and it also gives him pain to move about; there was no open wound running pus from spring of 1920 to 1925, between those dates hard lumps would come but instead of breaking out and running pus on the outside, the system seemed to absorb it; "they would get sore and stay sore for a while and then gradually go away without coming to a head and opening * * * I have not had one job since I was discharged from the army or since April, 1919, that I didn't let go, the company let me go because of the condition of my leg; I couldn't hold the job."

Defendant seems to lay great stress upon the baseball episode and much time was devoted to it: "Q. How did it happen you played baseball? A. I found when I would sit around in school or in an office, anything

like that, my leg would get all quivering and sore; if I got out in the air and got a little exercise and got my mind off my leg, it would kind of help me and I felt better for it lots of times, for the exercise; it seemed to liven me up a little bit." He said that he consulted a physician with reference to playing. Dr. E. S. Porter had plaintiff under treatment at Fort Snelling in May or June, 1919; described the wound as: "Old gun shot wound, right thigh, inner aspect, four inches above the knee joint, still draining." He was there three or four weeks until the wound healed. Dr. Porter said of the wound in December, 1919, when he again treated it: "He was suffering with a painful swelling at the site of the old wound * * * he had chronic osteomyelitis at that time, but it was negative."

Dr. Porter testified, in his opinion, that plaintiff was permanently and totally disabled at the time of his examination in June or July, 1919. Mr. J. E. Lane, employer of plaintiff, corroborated statements of plaintiff as to his physical condition at Windham; kept him on out of sympathy and because his father was a partner, although he (Lane) discovered plaintiff's physical incapacity within three or four months after he began work, but did not ask him to resign until October, 1926. Others testified about the same as to plaintiff's record at Moore and Windham. Dr. John L. Treacy saw plaintiff at Vichy, France, in November, 1918; the latter was in a hospital there at that time, or said he was; examined plaintiff numerous times; first time about 1925, when diagnosis was cellulitis of the leg, abscess, right leg; operated on the leg on three different occasions; heard the evidence and knows the history of the case; and testified that in his opinion plaintiff's disability has been total and permanent since he was operated on in April, 1919. Dr. Treacy said that plaintiff could have played baseball as testified, but it was foolish of him to do so; that he might play to-day and be unable to play again; that his trouble is an "up and down situation"; that he was in the hospital for treatment frequently during the past four or five years.

Dr. F. B. Nather, for the defendant, said from the evidence he thought that plaintiff had an osteomyelitis in 1920; that following the operation of Dr. Porter that it healed up, became quiescent, and was not of a very disabling nature. Dr. B. H. Fraser said he did not think the condition of plaintiff would be a permanent total disability with proper treatment. Dr. Robert P. Smith believes he could do office work, not farming or hardware business, and that his case is not one of a permanent total disability.

The wounded leg seems to have been seriously hurt when plaintiff was in charge of dipping mules for mange in Germany in April, 1919; he was helping put an unruly mule into a vat, and said: "The mule went in, and as he did he put considerable weight on my back, which forced me down into a squatting position which pulled on the ligaments and the muscles where this piece of steel had gone in and maybe tore something loose in there, is' what it felt like, because it immediately started to swell."

Dr. Thomas F. Walker said that osteomyelitis "is essentially an inflammation of the bone marrow or cancellous tissue, which is in the center of the bone." When shown X-ray pictures of the injured part of the right leg, used by defendant's doctors, he said they did not show the marrow of the bone and "therefore one would be absolutely unjustified in drawing any conclusions whatever regarding osteomyelitis from those pictures"; he excepted one picture only as better than the others.

From his own examination, X-ray plates, coupled with the history of the case and testimony he had heard, he was of the opinion that plaintiff was permanently and totally disabled and that he has had osteomyelitis for years; that he "is very apt to have these 'flare ups' of this condition the rest of his life unless proper surgical treatment or a cure is perfected." Did not know of any cure except by surgical operation; whether he could be cured would seem to depend upon whether he could stand the severe shock of another operation. Dr. Treacy said after a consultation at Fort Harrison that such a course was not deemed advisable.

It does not seem necessary to discuss another ailment out of which counsel for defendant endeavored to make capital, as it would make no difference under the facts here whether it contributed to the soldier's disability, or not, although from the evidence it does not appear to have done so.

■ I have tried to keep constantly in mind during the progress of this trial the rule relied upon to enable one to recover on a policy of war risk insurance, which is: Does the evidence show that the insured soldier, while his insurance was in force, became so disabled as to prevent him from following a substantially gainful occupation continuous-

ly, and, if so, is such condition likely to continue throughout the life time of the insured? Voluminous notes were taken of the testimony during the trial which have been used frequently in referring to the transcript of the testimony, and I have endeavored to examine and weigh all the material evidence showing injuries, sickness, hospitalization, medical and surgical treatment, various kinds of work and length of time engaged, plaintiff's entire statement on the witness stand, particularly scrutinizing all evidence of a corroborative nature, and its materiality and importance, bearing in mind the rule referred to, which is always given as an instruction in a jury trial, and is of equally binding force upon the court in a trial without a jury. Time and again throughout the years that have elapsed since the defendant received his honorable discharge from the army, has he endeavored to follow a substantially gainful occupation, and at times he succeeded in doing so for a brief period; but nowhere throughout the case does it appear that he has been able to follow such occupation continuously; in all instances it appears that he was sooner or later obliged to leave his work because of his physical inability to carry on. Time and again employment was refused because plaintiff could not furnish a satisfactory record of prior employment. As soon as it appeared that he had been obliged to quit his former positions because of his physical unfitness, the prospective employer was no longer interested in his application for work. I have examined carefully briefs and authorities submitted by counsel for both sides, and in the main it would be difficult to disagree with either as to the facts claimed to exist. There is, of course, usually a tendency on the part of the contestants to overemphasize advantageous points, and although I could accept in the main the statement of facts prepared by the defendant, the conclusions of law from the same source could not be adopted. In other words, I cannot conscientiously say, in view of all the proof, that the plaintiff has not brought himself within the rule which will enable him to recover the proceeds of his war risk policy. One thing certainly is made quite prominent in the career of Lieut. Wiedeman from the time of his discharge from the Fort Snelling Hospital and from the army, and that is that he seems to have endeavored with great determination to obtain and hold positions irrespective of his physical ailment, and that when the government sent him to school at Missoula he made the best of his opportunities and graduated;

if he is to be penalized for his strenuous and often repeated efforts to find work and do it, rather than quit altogether and let the government take care of him, then this case might afford a good example of what a soldier must not do before entering upon a contest with the government over a policy of war risk insurance. U. S. v. Spencer H. Lawson (C. C. A. 9, May 18, 1931) 50 F.(2d) 646.

Accordingly, judgment will be entered for the plaintiff with costs.